Of Counsel:
KAWAMURA LAW OFFICE, LLLC.
Attorneys at Law

RECEIVED
CORPORATION COUNSEL
C AND C OF HONOLULU

*1 fee for City only*

'19  NOV −8  P 2 :05
TRACY S. FUKUI

**Electronically Filed
FIRST CIRCUIT
1CCV-19-0002086
04-NOV-2019
01:20 PM**

ROBERT D. KAWAMURA   4537-0
350 Ward Avenue, Suite 106
Honolulu, Hawaii     96814
Telephone:  (808) 225-4200
Facsimile:  (808) 564-0850
Email:   AttorneysHawaii@aol.com
Website: AttorneysHawaii.com

Attorneys for Plaintiffs
GAIL GARIN, Individually and as
Administrator of the Estate of CASIMIR POKORNY,
Deceased; LIANNA MCCURDY and DANIEL VERDERAME

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| GAIL GARIN, Individually and as ) Administrator of the Estate of ) CASIMIR POKORNY, Deceased; ) LIANNA MCCURDY; and DANIEL ) VERDERAME, ) <br><br>               Plaintiffs, ) ) )<br>     vs. ) ) )<br> ALINS SUMANG; SHELDON WATTS; ) CITY AND COUNTY OF HONOLULU; ) JOHN DOES 1-10; JANE DOES 1-10; ) DOE CORPORATIONS 1-10; DOE ) PARTNERSHIPS 1-10; DOE JOINT ) VENTURERS 1-10; DOE LIMITED ) LIABILITY ENTITIES 1-10; DOE ) NON-PROFIT ENTITIES 1-10; DOE ) GOVERNMENTAL ENTITIES 1-10; DOE ) UNINCORPORATED ENTITIES 1-10; ) and OTHER DOE ENTITIES 1-10, ) ) )<br>               Defendants. )<br>_____ ) | Civil No. _____<br>(Motor Vehicle Tort)<br><br>**COMPLAINT**; DEMAND FOR JURY TRIAL; SUMMONS |

Exhibit "A"

<u>**COMPLAINT**</u>

Plaintiffs GAIL GARIN, Individually and as Administrator of the Estate of CASIMIR POKORNY, Deceased, LIANNA MCCURDY and DANIEL VERDERAME, by and through their attorneys, Kawamura Law Office, LLLC., bring this Complaint against Defendants above-named, and in doing so, allege and aver as follows:

<u>**COUNT I - NEGLIGENCE**</u>

1. Plaintiff GAIL GARIN is and was at all relevant times herein a resident of Montgomery County, State of Pennsylvania ("Garin") and is the mother of Casimir Pokorny, deceased ("POKORNY"), her only child, who was killed in the January 28, 2019 motor vehicle accident which occurred in the City and County of Honolulu, State of Hawaii as a result of the acts and omissions of the Defendants as alleged herein, and she is also the Administrator of the Estate of Casimir Pokorny, Deceased (collectively referred to herein as "Plaintiff GARIN").

2. At all material times herein, POKORNY, now deceased, was a resident of Montgomery County, State of Pennsylvania was just 26 years old at the time of the accident.

3. Plaintiff LIANNA MCCURDY is and was at all relevant times herein a resident of the City & County Honolulu, State of Hawaii ("Plaintiff MCCURDY").

4.   Plaintiff DANIEL VERDERAME is and was at all relevant times herein a resident of the City & County Honolulu, State of Hawaii ("Plaintiff VERDERAME").

5.   At all relevant times herein, Plaintiffs MCCURDY and VERDERAME were hosting two friends, POKORNY and his girlfriend Eva Mascaro, both visiting from Pennsylvania, and they were all waiting to cross Ala Moana Boulevard when the Truck, as discussed herein, plowed into them, killing POKORNY and severely injuring Plaintiffs McCURDY and VERDERAME.   POKORNY was Plaintiff VERDERAME'S best friend.

6.   Defendant ALINS SUMANG is and was at all relevant times herein a resident of the City & County of Honolulu, State of Hawaii ("Defendant SUMANG").

7.   Defendant SHELDON WATTS is and was at all relevant times herein a resident of the City and County of Honolulu, Hawaii and at all relevant times herein was working in the course and scope of his employment and official capacity as a Police Officer with the Honolulu Police Department ("HPD"), the principal law enforcement agency within the City and County of Honolulu, State of Hawaii ("Defendant WATTS").

8.   Defendant CITY & COUNTY OF HONOLULU is and was at all relevant times hereto a municipal corporation within the State of Hawaii ("Defendant CITY").   At all relevant times herein, Defendant CITY employed Defendant WATTS as a police

3

officer in the Honolulu Police Department ("HPD") whose acts and omissions as alleged herein caused and/or contributed to Plaintiffs' injuries and damages as alleged herein, which acts and omissions occurred while he was acting within the course and scope of his employment and official capacity as a police officer with Defendant CITY.

9. There existed a master-servant relationship between Defendant WATTS and Defendant CITY. As a direct and proximate result of said officer's acts and omissions as alleged herein, Plaintiffs have suffered injuries and damages as set forth herein. As a result thereof, the liability of said officer is imputed to Defendant CITY and Defendant CITY is liable to Plaintiffs pursuant to the doctrine of Respondeat Superior.

10. Defendants JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE JOINT VENTURERS 1-10, DOE LIMITED LIABILITY ENTITIES 1-10, DOE NON-PROFIT ENTITIES 1-10, DOE GOVERNMENTAL ENTITIES 1-10, DOE UNINCORPORATED ENTITIES 1-10, and OTHER DOE ENTITIES 1-10 (collectively referred to as "Doe Defendants") are persons, corporations, partnerships, limited liability companies, business entities, non-profit entities, and/or governmental entities who acted in a negligent, wrongful or tortious manner which proximately caused or contributed to injuries and damages sustained by Plaintiffs. Plaintiffs have

been unable to ascertain the names and identities of the Doe Defendants from the investigation that has been conducted to date. Accordingly, Plaintiffs have sued the Doe Defendants herein under fictitious names pursuant to Rule 17(d) of the Hawaii Rules of Civil Procedure, and Plaintiffs will substitute the true names, identities, capacities, acts and/or admissions of the Doe Defendants when the same are ascertained.

11. All of the acts and omissions complained of herein occurred within the City & County of Honolulu, State of Hawaii.

12. Plaintiffs contend that the amount of each of their damages as alleged in this complaint fall within the jurisdictional requirements of this Honorable Court, exclusive of interest, attorney's fees and costs.

13. Plaintiff GARIN brings her wrongful death claim pursuant to Section 663-3 of the Hawaii Revised Statutes and also brings her survivor claim pursuant to Section 663-7 of the Hawaii Revised Statutes, and has met all of the requirements of Hawaii No-Fault Law, including but not limited to H.R.S. Section 431-10C-306 (b) (1), in bringing this suit.

14. Plaintiff MCCURDY has met all of the requirements of Hawaii No-Fault Law, including but not limited to H.R.S. Section 431-10C-306 (b) (3) & (4), in bringing this suit.

15. Plaintiff VERDERAME has met all of the requirements of Hawaii No-Fault Law, including but not limited to H.R.S. Section 431-10C-306 (b) (3) & (4), in bringing this suit.

16. On October 14, 2019, Plaintiffs hand-delivered a notice of their claims herein to the Honorable Ikaika Anderson, Chairman of the Honolulu City Council pursuant to Section 46-72 of the Hawaii Revised Statutes.

17. On January 28, 2019, Defendant SUMANG had been drinking and was under the influence of alcohol and was negligently operating a 2006 Ford F-150 Truck bearing License Number PNN 114 ("the Truck") in the City and County of Honolulu losing control of the Truck causing it to collide into parked cars at the intersection of Amana and Makaloa streets. No one was injured as a result of these minor collisions. Defendant WATTS was in the area and was flagged down by a citizen to advise him that a truck had struck his vehicle and had fled westbound on Makaloa Street. Defendant WATTS began looking for the Truck and found a truck matching the witness description heading mauka bound on Keeaumoku Street fronting Walmart and he began pursuing it as it turned left on Rycroft Street, then at a high rate of speed southbound on Pensacola Street, westbound on Kapiolani Boulevard, southbound on Kamakee Street, eastbound on Kona Street, then southbound on Piikoi Street and finally

westbound on Ala Moana Boulevard to the intersection of Ala Moana Boulevard and Kamakee Street. In all, the pursuit lasted approximately 2 minutes. As a result of the high speed pursuit up and down these streets, and most critically on Ala Moana Boulevard, Defendant SUMANG attempted to evade Defendant WATTS on Ala Moana Boulevard by attempting a sudden right turn onto Kamakee Street when he lost control of the Truck causing it to violently climb an island severing a light pole and colliding into eight pedestrians and then slamming into another truck. As a direct and proximate result of the collisions, three individuals were killed including POKORNY and six others were seriously injured including MCCURDY and VERDERAME ("the accident").

18. The accident occurred at approximately 6:20 p.m. on January 28, 2019.

19. Defendant WATTS reported that he followed the Truck onto Ala Moana Boulevard and saw the Truck approximately 1/3 mile ahead of him. He reported that traffic conditions were "*heavy*" and he was stuck in traffic so he activated his blue lights so that a vehicle ahead of him would move out of the way. He said that he saw a Honolulu Fire towing a boat ahead of him with its lights and siren activated. He claimed that all vehicles on Ala Moana Boulevard were pulling over which caused him to be stuck in traffic. He claimed that while still 1/3 of

7

a mile behind the Truck he observed the Truck change lanes and pass the fire truck and change to the far left lane in the area of Ala Moana and Kamakee Street and saw the Truck make a "*sharp right turn*" across traffic to Kamakee Street, saw a light pole fall and then came upon the subject accident at that intersection. See Police Report No. 19-037743-001, Pg. 24.

20.   HPD Lt. James Slayter told the Star Advertiser that the Truck had hit other cars several blocks away and then sped across three lanes of traffic in an attempt to turn onto Kamakee Street.

21.   At one of Defendant SUMANG's criminal hearings, HPD Officer Brandon Ohta testified that the engine computer on SUMANG's truck recorded the vehicle's speed at 74-76 mph before impact. HPD testing revealed that Defendant SUMANG's speed along Ala Moana Boulevard was travelling faster than 64.07 miles per hour when he first began to brake and begin to turn to the right and he was traveling at 51.08 miles per hour when his truck collided into the pedestrians. See Police Report, Pgs. 736-739. The speed limit for the subject portion of Ala Moana Boulevard is 35 mph and therefore SUMANG was travelling at twice the posted speed limit during the pursuit.

22.   At a criminal hearing for Defendant SUMANG, Investigating Police Officer Suaesi Tuimaunei testified that he found a bottle of vodka in the truck Defendant SUMANG was

driving and that he was belligerent and cursed at emergency workers. Defendant SUMANG told emergency responders *"Fuck you, I don't give a Fuck."* Court documents indicated that Defendant SUMANG smelled strongly of alcohol after the crash.

23. At all relevant times herein, Defendant SUMANG owed a duty to Plaintiffs to operate the Truck in a reasonably safe and prudent manner observing all traffic laws and traffic conditions. Defendant SUMANG breached this duty when he negligently operated the Truck as alleged herein, which negligence includes but is not limited to driving under the influence of alcohol, speeding, ignoring stop signs, driving recklessly, evading Defendant WATTS' pursuit, and failing to negotiate the right turn onto Kamakee Street.

24. As a direct and proximate result of the negligence of Defendants as alleged herein, and in ways to be discovered in this case, POKORNY suffered horrific pre-impact terror, was violently struck by the Truck causing him to suffer catastrophic, atrocious, and gruesome injuries, from which he died from, entitling Plaintiff GARIN, as Administrator of the Estate of Casimir Pokorny, deceased, to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

25. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, and in ways to be

discovered in this case, resulting in Pokorny's untimely death, Plaintiff GARIN, individually, lost her only child in a horrific manner and she has suffered and continues to suffer extreme emotional distress, depression, anguish, grief, sorrow; a loss of love, affection, society, companionship, comfort, consortium, protection, care, attention, advice, counsel, filial care and attention, relationship with her only child, has incurred burial and funeral expenses, entitling Plaintiff GARIN, individually, to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

26. As a direct and proximate result of Defendants' acts and omissions as alleged herein, and in ways to be discovered in this case, Plaintiff McCURDY suffered severe, permanent and disfiguring injuries and witnessed bodies scattered on the street including her friend POKORNY as first responders hopelessly attempted to render aid to him.

27. As a direct and proximate result of Defendants' acts and omissions as alleged herein, and in ways to be discovered in this case, Plaintiff VERDERAME was injured and witnessed his girlfriend Plaintiff MCCURDY and close friend POKORNY both get violently struck by the Truck. He witnessed Plaintiff MCCURDY who lay seriously injured and bleeding on the pavement as well as other bodies scattered on the street

including POKORNY as first responders hopelessly attempted to render aid to him.

28. As a direct and proximate result of the negligence of Defendants as alleged herein, and to be discovered in this case, Plaintiffs McCURDY and VEDERAME suffered damages including but not limited to severe, permanent and disfiguring injuries, have incurred and will continue to incur medical, psychiatric, psychological and rehabilitative expenses, have suffered mental and emotional distress, a loss of consortium, have lost income and earning capacity, and suffered other damages, entitling each Plaintiff to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

**COUNT II – NEGLIGENT PURSUIT**

29. Plaintiffs reallege and incorporate herein by reference all of the previous allegations contained in this complaint as if fully set forth herein.

30. At all relevant times herein, The Honolulu Police Department had a "MOTOR VEHICLE PURSUITS" policy in place and effect.

31. According to said policy, its purpose is to *"assist its officers in the safe performance of their duties and to protect the public, . . ."*

32. According to Section I.A. of said policy, a "*Motor Vehicle Pursuit*" is "*An effort by an officer operating a motor vehicle to stop another motor vehicle when an occupant of that vehicle is a suspected violator of the law and the driver of that vehicle appears to be ignoring lawful commands to stop or to be fleeing from the police.*" Defendant SUMANG fled the scene of one or two motor vehicle collisions, ran stop signs, sped away from Defendant WATTS and failed to pull over despite Defendant WATTS following him down many streets for 2 minutes with his lights.

33. Defendant WATTS denies that he was in pursuit of Defendant SUMANG at the time of the accident, however, HPD received a "*few calls*" about Defendant WATTS pursuing SUMANG down Pensacola. One caller reported, "**Yeah it looks there's uh a police officer chasing a white ford truck going down uh Pensacola.**" Dispatcher, "*Oh yeah you know what sir, yeah you know what **we actually got a few calls for that,** so we already have officers on the way to that.*" HPD Dispatch Audio, K1276 911.

34. Defendant WATTS reported that when he first saw Defendant SUMANG he was 15 car lengths away and then when following him on Rycroft Street he was 12 car lengths away. Then he says that when he switched his police light to "*Cruise Mode*" on Rycroft Street he was still more than 10 car lengths away and

12

that the distance increased.    However, video footage reveals that Defendant WATTS was in pursuit of Defendant SUMANG and just 3 to 5 car lengths behind him with his blue light on Kona Street (See Kona Street Video, Rear Parking Lot, 6:05:13 – 6:05:19) just before the high speed chase down Ala Moana Boulevard. Defendant WATTS further reported that he was "*approximately 1/3 of a mile*" behind Defendant SUMANG on Ala Moana Boulevard when he observed the truck pass a fire truck.   However, video from a City Bus on Ala Moana Boulevard indisputably reveals that he was in a **high speed pursuit** <u>**less than 2 seconds behind**</u> **Defendant SUMANG** <u>**within a block**</u> (between the intersections of Ala Moana Boulevard & Queen Street and Ala Moana Boulevard & Kamakee Street) **before the accident.**    See City Bus Video, Disc 1, 18:13:10 – 18:13:73).   Consistent with this video footage, Defendant WATTS **admitted** that when on Ala Moana Boulevard <u>**he was close enough**</u> behind Defendant SUMANG to <u>**see**</u> him make the "***sharp right turn***" across traffic to Kamakee Street and <u>**saw**</u> the light pole fall. See Police Report, Pg. 101.

35.  According to Section II of said policy, some "GENERAL CONSIDERATIONS" to consider in initiating a pursuit are that:

> A. *Motor Vehicle pursuits may be hazardous because of the speeds and intricate maneuvers involved.*
> B. *Therefore, in each decision to engage in a motor vehicle pursuit, the need to apprehend the suspect must be weighed against the need to avoid harm to*

*persons and property. In general, the greater the risk of harm to the officer, the suspect, or the public in the pursuit, the less justification there is for the pursuit.*

36.  According to Section III of said policy, under "INITIATION OF PURSUIT", "**The blue light and siren shall be used to command a vehicle to stop before a pursuit is initiated**." According to HPD Chief Ballard, Defendant WATTS' pilot light was on but he only chirped his siren. **Consistent with Chief Ballard's statement, witness statements and video from the City Bus and from the Hokua Tower on Ala Moana Boulevard confirm that he did <u>not</u> activate his siren or flashing lights during the pursuit.**

37.  According to Section III A. of said policy, under "INITIATION OF PURSUIT", "*A pursuit may be initiated with an authorized emergency vehicle if an officer directs a driver to stop but that driver exhibits intentions of eluding the officer by being evasive.*" Defendant WATTS pursued him down many streets (Rycroft, Pensacola, Kapiolani, Kamakee, Kona, Piikoi and Ala Moana) at a high rate of speed and Defendant SUMANG was attempting to evade him.  For example, a witness who observed the pursuit on Pensacola Street near McKinley High School drove all the way to the accident scene to tell his story to HPD.  His witness statement is captured by Officer Jozlyn Harrington's Bodycam and he said, "**We saw 'um running from the**

14

*cop."* Officer Jozlyn Harrington replied surprised, **"Huh?"** The witness continued, **"The cop was chasing' um from like um Pensacola.  He turned right in front of us.  And <u>he was like trying to book it from the cop</u> . . . Right by McKinley.  Uh . . . He made a left turn in front of us.  Then like I wasn't sure. The cop <u>didn't</u> have his lights on.  But then it looked like he was swerving to the cars parked on the side and he took off."** <u>See</u> Harrington Bodycam: 11:32-12:53.

38.  According to Section III B. of said policy, under "INITIATION OF PURSUIT", *"When an officer initiates a motor vehicle pursuit,* **the officer shall continuously use the flashing blue light and siren."**  Defendant WATTS had his pilot light on but not flashing and only occasionally chirped his siren.  HPD Chief Ballard stated, *"We know he had his pilot light on but as far as his flashing light, that is still under investigation. The siren was on at one point chirping on and off that is all part of the investigation but generally when you lose sight of a suspect you turn off the lights and siren."*  **Video footage and witness statements confirm that Defendant WATTS did <u>not</u> activate his continuous siren or flashing lights during the pursuit.**  A witness stated, *"On January 28, 2019 around 6 pm I noticed a Ford Truck turn in front of me onto Pensacola drove into far right lane and made another right turn onto Kapiolani. There was a Police vehicle behind shortly after. Truck was driving very*

*fast and erratically.* **Police vehicle had blue light on but not flashing.** *Possibly flashed light to turn onto Pensacola . . . Siren was not on also.*" <u>See</u> Pg. 744, Police Report. Defendant WATTS should have activated his flashing lights and continuous siren during his pursuit of Defendant SUMANG instead of simply following him down several streets with merely his pilot light on, causing Defendant SUMANG to not pull over. Defendant WATTS' negligent pursuit in this fashion only made Defendant SUMANG believe he could keep driving until he came upon an opportunity to evade the pursuit, which he attempted, by making the sudden turn at a high rate of speed resulting in him losing control of the Truck and colliding into the pedestrians.

39.    According to Section IV. C. of said policy, under "SUPERVISORY RESPONSIBILITIES", **"When continuing the pursuit becomes dangerous, it shall be the responsibility of any field supervisor to terminate it."** SUMANG was speeding down Rycroft Street, Pensacola Street, Kona Street, Piikoi Street and on Ala Moana Boulevard and **the pursuit was not terminated and if it was, it was terminated too late** as video footage from the City Bus and Hokua Tower reveal that Defendant WATTS was in a high speed pursuit of Defendant SUMANG and was just 2 seconds behind him **within a block** immediately before the accident.

40.    At all relevant times herein, HPD Chief Ballard said, "*The officer eventually observed the truck turn onto Ala*

16

*Moana Boulevard at a high rate of speed and weave in and out of traffic. The officer was unable to keep up with the truck in moving traffic.*" Similarly, WATTS reported that while on Ala Moana Boulevard "*Traffic conditions were heavy and I was stuck in traffic so activated my blue lights so that the vehicle in front of me would move out of the way.*" (See Police Report, Pg. 24). However, the City Bus video makes it clear that Defendant WATTS **was able to keep up** with Defendant SUMANG as he was **right behind him in fast pursuit** on Ala Moana Boulevard when the accident occurred and there was **no** traffic ahead of them **within the block** before the accident and it was only immediately at the intersection of Ala Moana Boulevard and Kamakee Street was there some traffic. See City Bus Video, Disc 1, 18:13:10 – 18:13:73.

41.   According to Section VI. A. of said policy, under "TERMINATION OF PURSUIT", "*A pursuit shall be terminated under any one of the following conditions:*

> 1. *When the risk created by* **the pursuit is unreasonable given the nature of the offense for which the suspect is being pursued** *and the* **conditions under which the pursuit must be conducted.**
>
> A. *An assessment of the risks created by the pursuit should include:* **the speeds involved, the volume of traffic on the road, the amount and kind of pedestrian traffic in the area,** *. . .* **running a red light** *or* **stop sign, time of day** *. . ."*

42.   The risk created by the high speed pursuit was unreasonable given that Defendant SUMANG had initially **only** been

17

involved in **minor property damage collisions involving no injuries** and he only began accelerating after Defendant WATTS began pursuing him down many streets for two minutes at high rates of speed without any siren or flashing lights **pushing Defendant SUMANG into the pedestrian friendly Kamakee Street area.** The minor property damage collisions with no injuries on Amana Street did not justify the two minute high speed pursuit, in violation of the HPD Motor Vehicle Pursuits Policy.

43. Defendant WATTS initially reported on the day of the accident that "*I activated my blue strobe lights and siren **for a second** when I made the turn to alert oncoming vehicle traffic then turned off my strobe lights and sirens.*" See Police Report, Pg. 24. However, three days later on February 1, 2019, Defendant WATTS **changed his story** by **amending** his original statement in the Police Report claiming that "*At the time of my initial statement, I was still in state of shock because I saw the pedestrian fatalities and had difficulty recalling the event that occurred on January 28, 2019. After getting some reset and running the events that happen that night through my mind, I would like to submit this revised follow up report for the on-going investigation.*" He then proceeded to report that "*I **activated my blue strobe lights and siren** when I made the turn to alert oncoming vehicle traffic. While I was still 12 car lengths away, I saw the vehicle on Rycroft Street by the Walmart*

parking garage entrance, I ran the Hawaii license plate [    ] with Dispatch. **My police siren and blue strobe light were still activated** at that time. After I ran the plates, the vehicle accelerated at high rate of speed Ewa bound on Rycroft Street with other vehicles on the roadway between the suspect vehicle and myself. **I pressed the rocker switch to turn off my police siren and strobing blue lights which I thought was confirmed** because there was no audible sound coming from my vehicle. However, I am **not** certain whether my blue strobe lights were still activated or not, because I was unable to see any indication that they were flashing from inside my police vehicle. I assumed I had successfully switched my police light to 'Cruise Mode' I was still more than 10 car lengths away and the distance between my police vehicle and the suspect vehicle increased." See Police Report, Pg. 101-102. Therefore, Defendant WATTS then   negligently continued his pursuit **not** knowing if his blue flashing lights were on or not; clearly, they were not.

44. While Defendant WATTS denies he was in a pursuit and instead claims that he was "**attempting to locate**" Defendant SUMANG and "**trying to catch up to um**", the latter is an admission that he was in a pursuit and **video footage from the City Bus and the Hokua Tower fronting Ala Moana Boulevard make it indisputably clear that he was in a high speed pursuit of**

19

SUMANG **within the block** before the accident passing the City Bus.  Just seconds later, the bus then approaches the scene of the accident and the bus driver says *"Just happened, the guy was speeding, the cop was chasing 'um!"* See City Bus Video, Disc 1, 18:14:19 – 18:14:25.

45.  Consistent with Defendant WATTS being in a high speed pursuit at the time of the accident, in a Probable Cause Declaration, HPD Corporal Misty Clark stated, *"You affiant received a video recording taken from a City and County of Honolulu Bus, . . . Your affiant reviewed the said recording from the Bus No. 955, Route 19, showed* **the suspect truck, Unit 1, travel past the said bus at a high rate of speed** *on Ala Moana* **boulevard** at about 6:13 p.m.  **Following immediately behind the suspect truck was a police vehicle with blue lights activated** and a truck from the Honolulu Fire Department.  It was later determined that **the aforementioned police vehicle belonged to Defendant WATTS."**  See Police Report, Pg. 835.

46.  Consistent with Defendant WATTS being in a pursuit when the accident occurred, at least 3 witnesses reported that Defendant WATTS was immediately on the scene after the accident.  Witness Rick Kariya stated, **"Immediately after the accident, a Police SUV pulled up going W on Ala Moana.  I identified/assumed because of the blue light."**  See Police Report, Pg. 76.  Similarly, a witness testified that she was

stopped at a red light at the intersection of Ala Moana Boulevard and Kamakee Street when the accident occurred and before her sister could call 911 "**Within 5 seconds of all this happening**" **a police car was on the scene** with a blue light which was Defendant WATTS who was the first officer immediately upon the scene because he was pursuing Defendant SUMANG. See Police Report, Pg. 316. Similarly, another witness was about to call 911 by "instinct" immediately after the accident occurred but she said, ". . . yeah. I, I tried, I **when the lamppost you know was going on, I mean, I'm literally scrambling in my purse to trying to get my phone out like, we gotta call 9-1-1.** We gotta call 9-1-1. And that was my instinct and **my brother's like, police are already on the scene**. And I just I heard it, but I didn't stop. I'm like, "no we gotta call 9-1-1. And so I got my phone out and called 9-1-1 and then, **then I saw the blue light**. And I have seen this like this yellow um, I think a fire or water rescue. . ." See Police Report, Pg. 339. **These witness accounts are consistent that Defendant WATTS was instantly on the scene because he was chasing SUMANG within a block of the accident.**

47. Defendant WATTS' negligent pursuit of Defendant SUMANG without flashing lights or continuous siren created a dangerous risk of harm for vehicles and pedestrians at the intersection of Ala Moana Boulevard and Kamakee Street as none

of the injured persons or witnesses indicated that they were alerted to the pursuit by any siren or flashing lights. Instead, the impact took everyone by surprise.

48. At all relevant times herein, Defendant WATTS, owed a duty to Plaintiffs and the other vehicles including pedestrians to either properly pull over Defendant SUMANG pursuant to the HPD Motor Vehicle Pursuits Policy and/or to timely terminate the pursuit given the attending circumstances such as the heavy pedestrian traffic in the area at the time and because Defendant SUMANG was speeding erratically down many streets including Ala Moana Boulevard despite being pursued by Defendant WATTS.

49. Defendant WATTS breached this duty when he failed to comply with the HPD Motor Vehicle Pursuits Policy by improperly and negligently pursuing Defendant SUMANG without his flashing lights and continuous siren and instead chose to pursue him down many streets with his pilot light on but not flashing, pushing him into the heavily congested Kakaako area causing him to attempt to evade by making the sudden right turn onto Kamakee Street and lose control of the Truck.

50. Defendant WATTS further breached this duty when he negligently failed to timely terminate his pursuit as required by the HPD Motor Vehicle Pursuits Policy. He had an opportunity to terminate the pursuit before the pursuit reached

Ala Moana Boulevard and certainly when he claims he was stuck in traffic on Ala Moana Boulevard, but instead negligently chose to pursue Defendant SUMANG at a high rate of speed down Ala Moana Boulevard within a block of the accident.

51.  After the accident and at the scene of the accident, as documented by Defendant WATTS' videocam footage, a Sergeant **coached him on what to report so that he does not get in trouble.**  He tells him to make sure he says he was not in a pursuit.   He said, "*I know you know already. But just be very detailed, [unintelligible]* **we don't want anything coming back thinking that, at no time was this some kind of pursuit, where you drove the guy into** . . . *I mean granted he's probably 210 but you know what I mean* **just to cover yourself very well.**" Defendant WATTS replied, "*Thank you.*"   Then later Defendant WATTS says "*I was back there, I was . . .*"  His sergeant then says "**At no time was there any pursuit or whatever when you turn lights** [unintelligible] . . . **my lights were not on, strobe lights were not on.   You know how they're going to look for that.**"   Defendant WATTS, "**yeah that's why I said they're going** . . . **that's why I said** they're going to try and get me on this one because if there's video and stuff."   ."   <u>See</u> Watts Videocam: 12:53-14:36.   Similarly, wary of the possibility of videos of the pursuit, another officer named "Jay" talks to Defendant WATTS by the back of a vehicle and then says, "**From**

*where you were, I just like make sure there were no cameras . . . nothing, nothing that will . . ."* He tells Defendant WATTS that **he should walk and check the area for cameras.** Defendant WATTS says, *"I'll do it later when no one's in the area . . . . I'll just walk on down."* Then the Officer named Jay responds, *"Well no cause see actually I was gonna say you gotta go all the way, . . . because he turned on Piikoi ah?" ."* <u>See</u> Watts Videocam: 02:43-03:28.

52. After the accident and at the scene of the accident, as documented by Defendant WATTS' videocam footage, Officer Jozlyn Harrington says to Defendant WATTS, *"Ok so he's the one (referring to a witness) that saw the truck like turning and then he said he saw you going . . . but I'm going to make sure you were far way and this will be the . . . "* as she taps on her report pad. Then Defendant WATTS blurts out **"Yeah but I know they're going to . . . This is fucked up."** <u>See</u> Watts Videocam: 00:21-0036. Then a witness who observed the pursuit near McKinley High School walks up to Officer Harrington and says, *"We saw 'um running from the cop." . . . "The cop was chasing' um from like um Pensacola. He turned right in front of us. And he was like trying to book it from the cop . . . Right by McKinley. Uh . . . He made a left turn in front of us. Then like I wasn't sure. The cop didn't have his lights on. But then it looked like he was swerving to the cars parked on the side*

*and he took off."*   See Harrington Videocam: 11:32–12:53.
However, this critical statement is **<u>omitted</u>** from the 853 page
Police Report.   This witness drove all the way to the accident
scene to tell the police that Defendant SUMANG was evading a
high speed chase but this critical statement is curiously
missing from the 853 page Police Report.

53.   Similarly, after the accident and at the scene of
the accident, as documented by Defendant WATTS' videocam footage
Officer Jonathan Baba walks up to Defendant WATTS and asks him,
*"Are you good?"* and Defendant WATTS replies, ***"This is fucked up
man . . . I know they are going to try to hang this shit on me."***
He then asks Officer Baba, *"What's your witness' statements say
. . . the one from the condo?*   Officer Baba replied referring to
a statement from Daniel Strasser who witnessed the pursuit from
a condo on Ala Moana Boulevard, ***"<u>followed closely by an HPD
SUV</u>."***   Then Defendant WATTS says, *"Yeah see I wasn't."*   The
Officer asks, *"Was your lights on?"* Defendant WATTS replied,
***"Yeah my lights were on because I was trying to catch up to um."***
See Watts Videocam: 11:28–12:12.   While Strasser made the
detrimental statement to Officer Baba, this statement is **<u>also
omitted</u>** from the Police Report where said officer discusses
Strasser's statement.   See Pg. 62, Police Report.   He only
reported that Strasser witnessed the truck *"at a high rate of
speed"* on Ala Moana Boulevard.   Likewise the entire reference to

Defendant WATTS pursuing Defendant SUMANG is **omitted** from Strasser's statement on Pg. 788 of the Police Report. Similarly, the Closing Report makes **no** mention of the pursuit. See Pg. 845, Police Report. Strasser's handwritten statement is included but behind another witness statement.

54. These acts and omissions constitute police misconduct and corruption and were intended to improperly protect Defendant WATTS and the Police Department by omitting damaging evidence that supports a finding that Defendant WATTS was in an improper pursuit of Defendant SUMANG without flashing lights and continuous siren and that he failed to timely terminate the pursuit pushing Defendant SUMANG into the heavily congested and pedestrian friendly Kakaako area, directly and proximately causing the accident. As a further result of these acts and omissions of police officers in this case as alleged herein and as documented in the Police Report and video tapes, evidence has been suppressed, altered, tainted and/or omitted from the Police Report No. 19-037743-001.

55. As a direct and proximate result of Defendant WATTS negligently pursuing Defendant SUMANG without his continuous siren and flashing lights, Defendant SUMANG was pushed into the heavily congested Kakaako area and none of the victims of the accident heard the fast approaching pursuit and therefore were not able to get out of the way or otherwise take

evasive action and were either killed or severely injured as a result of the violent collision.

56. As a direct and proximate result of the negligence of Defendants as alleged herein, and in ways to be discovered in this case, POKORNY suffered pre-impact terror, was violently struck by the Truck causing him to suffer catastrophic and gruesome injuries, from which he died from, entitling Plaintiff GARIN, as Administrator of the Estate of Casimir Pokorny, deceased, to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

57. As a direct and proximate result of the acts and omissions of Defendants alleged herein and in ways to be discovered in this case, resulting in Pokorny's untimely death, Plaintiff GARIN, individually, lost her only child in a horrific manner and has suffered extreme emotional distress, depression, anguish, grief, sorrow; a loss of love, affection, society, companionship, comfort, consortium, protection, care, attention, advice, counsel, filial care and attention, relationship with her only child, has incurred burial and funeral expenses, entitling Plaintiff GARIN, individually, to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

58. As a direct and proximate result of the acts and omissions of Defendants as alleged herein and in ways to be

discovered in this case, Plaintiffs suffered damages as alleged herein including but not limited to death, severe, permanent and disfiguring injuries, have incurred medical, psychiatric, psychological and rehabilitative expenses, have suffered mental and emotional distress, a loss of consortium, have lost income and earning capacity, and suffered other damages, entitling each Plaintiff to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

COUNT III – DRAM SHOP

59.   Plaintiffs reallege and incorporate herein by reference all of the previous allegations contained in this complaint as if fully set forth herein.

60.   At all material times herein, on January 28, 2019, Doe Defendants knew or should have known that Defendant SUMANG was intoxicated or otherwise under the influence of alcohol. Despite this knowledge, Doe Defendants intentionally and negligently served and/or sold liquor to Defendant SUMANG on January 28, 2019.

61.   At all material times herein, on January 28, 2019, Doe Defendants knew or should have known when they were serving and/or selling liquor to Defendant SUMANG that he would be driving. Despite this knowledge, Doe Defendants intentionally and negligently served and/or sold liquor to Defendant SUMANG on January 28, 2019.

62. As a direct and proximate result of Doe Defendant's aforementioned negligent acts and omissions and in ways in other ways to be discovered in this case, Plaintiffs suffered damages including death, severe, permanent and disfiguring injuries, have incurred medical, psychiatric, psychological and rehabilitative expenses, have suffered and continue to suffer mental and emotional distress and have lost income and earning capacity, and suffered other damages, entitling each Plaintiff to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

COUNT IV – NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiffs reallege and incorporate herein by reference all of the previous allegations contained in this complaint as if fully set forth herein.

64. Defendants' actions described above and below were willful, reckless, malicious, outrageous, deliberate, and purposeful. These acts were committed with the intention of inflicting severe emotional distress upon Plaintiffs and/or were done in reckless and/or negligent disregard of the probability of causing Plaintiffs severe emotional distress.

65. As a direct and proximate result of said acts, Plaintiffs were caused to suffer and continue to suffer serious, severe and grievous mental and emotional distress, horror,

29

strain, anguish, grief, sorrow, stress and anxiety, entitling each Plaintiff to a judgment against Defendants, jointly and severally, in amounts to be proven at trial.

COUNT V – PUNITIVE DAMAGES

66. Plaintiffs reallege and incorporate herein by reference all of the previous allegations contained in this complaint as if fully set forth herein.

67. Defendant SUMANG's actions as alleged herein and in ways to be discovered, were willful, reckless, malicious, outrageous, deliberate, and in conscious disregard of the consequences.

68. As a direct and proximate result of each of Defendant SUMANG's willful, reckless, malicious, and deliberate conduct in conscious disregard of the consequences, Plaintiffs are entitled to a substantial award of punitive damages against Defendant SUMANG to punish him and/or to deter this type of reckless and malicious conduct.

WHEREFORE, Plaintiffs pray for Judgment in their favor and against Defendants, jointly and severally, as follows:

1. Special damages as shall be proven at trial;

2. General damages as shall be proven at trial;

3. Punitive damages as shall be proven at trial against Defendant SUMANG;

4. Attorney's fees and costs;

5.    Prejudgment and post-judgment interest; and

6.    Such other and further relief as the Court deems just under the circumstances.

Dated: Honolulu, Hawaii, _October 4, 2019_.

ROBERT D. KAWAMURA

Attorneys for Plaintiffs
GAIL GARIN, Individually and
as Administrator of the
Estate of CASIMIR POKORNY,
Deceased; LIANNA MCCURDY and
DANIEL VERDERAME

Of Counsel:
KAWAMURA LAW OFFICE, LLLC.
Attorneys at Law

ROBERT D. KAWAMURA   4537-0
350 Ward Avenue, Suite 106
Honolulu, Hawaii      96814
Telephone:  (808) 225-4200
Facsimile:  (808) 564-0850
Email:  AttorneysHawaii@aol.com
Website: AttorneysHawaii.com

Attorneys for Plaintiffs
GAIL GARIN, Individually and as Personal
Representative of the Estate of CASIMIR POKORNY,
Deceased; LIANNA MCCURDY and DANIEL VERDERAME
LIANNA MCCURDY and DANIEL VERDERAME

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| GAIL GARIN, Individually and as Administrator of the Estate of CASIMIR POKORNY, Deceased; LIANNA MCCURDY; and DANIEL VERDERAME,<br><br>                 Plaintiffs,<br><br>     vs.<br><br>ALINS SUMANG; SHELDON WATTS; CITY AND COUNTY OF HONOLULU; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE JOINT VENTURERS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE NON-PROFIT ENTITIES 1-10; DOE GOVERNMENTAL ENTITIES 1-10; DOE UNINCORPORATED ENTITIES 1-10; and OTHER DOE ENTITIES 1-10,<br><br>                 Defendants. | Civil No. _____<br>(Motor Vehicle Tort)<br><br>**DEMAND FOR JURY TRIAL** |

## DEMAND FOR JURY TRIAL

Pursuant to HRCP Rule 38, Plaintiffs GAIL GARIN, Individually and as Administrator of the Estate of CASIMIR POKORNY, Deceased; LIANNA MCCURDY and DANIEL VERDERAME, by and through their attorneys, Kawamura Law Office, LLLC., hereby demand a jury trial on all issues so triable.

Dated: Honolulu, Hawaii, _October 4, 2019_.

_____
ROBERT D. KAWAMURA

Attorneys for Plaintiffs
GAIL GARIN, Individually and
as Administrator of the
Estate of CASIMIR POKORNY,
Deceased; LIANNA MCCURDY and
DANIEL VERDERAME

33

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | | |
|---|---|---|
| GAIL GARIN, Individually and as Administrator of the Estate of CASIMIR POKORNY, Deceased; LIANNA MCCURDY; and DANIEL VERDERAME,<br><br>                Plaintiffs,<br><br>     vs.<br><br>ALINS SUMANG; SHELDON WATTS; CITY AND COUNTY OF HONOLULU; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE JOINT VENTURERS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE NON-PROFIT ENTITIES 1-10; DOE GOVERNMENTAL ENTITIES 1-10; DOE UNINCORPORATED ENTITIES 1-10; and OTHER DOE ENTITIES 1-10,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. _____<br>(Motor Vehicle Tort)<br><br>**SUMMONS** |

**SUMMONS**

STATE OF HAWAII

To the above-named Defendants:

        You are hereby summoned and required to file with the

Court and serve upon Plaintiffs' attorneys, whose address is

Kawamura Law Office, LLLC., 350 Ward Avenue, Suite 106,

Honolulu, Hawaii 96814, an answer to the Complaint, which is

herewith served upon you, within twenty (20) days after service

34

of this Summons upon you, exclusive of the day of service.   If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Dated: Honolulu, Hawaii, _____.


_____
Clerk of the above-entitled Court